*49 OPINION OF THE COURT
Steven W. Paynter, J.
The defendants were originally charged with obstructing firefighting operations, obstructing governmental administration, resisting arrest and several counts of assault in the third degree. The People subsequently dismissed the counts of obstructing governmental administration and resisting arrest and reduced each of the other counts to attempts at the object crimes.
The charges arose out of an incident in which firefighters had responded to an alarm at 32-43 107th Street in Corona whereupon they became involved in an altercation with the defendants who thereafter became involved in further altercations with several police officers.
A nonjury trial was held before this court and the defendants moved for trial orders of dismissal at the close of the People’s case and again at the conclusion of the trial. The defendants argued that the People had failed to present a legally sufficient case in support of the charge that the defendants had attempted to obstruct firefighting operations since the evidence showed that any fire had already been extinguished when the fire trucks arrived and that the defendants were in fact the ones who were assaulted by the police officers.
This written portion of the court’s decision shall address only the motion to dismiss the count of attempted obstructing of firefighting operations since there are no reported decisions citing the statute under the current Penal Law and only one citation relating to a civil matter under the predecessor statute.
Section 195.15 of the Penal Law, obstructing firefighting operations, reads as follows:
“A person is guilty of obstructing firefighting operations when he intentionally and unreasonably obstructs the efforts of any:
“1. fireman in extinguishing a fire, or prevents or dissuades another from extinguishing or helping to extinguish a fire; or
“2. fireman, police officer or peace officer in performing his duties in circumstances involving an imminent danger created by an explosion, threat of explosion or the presence of toxic fumes or gases.”
The defendants were charged under subdivision (1) of the statute. The current statute is derived from section 1901 of the former Penal Law (renum § 1914 by L 1963, ch 136, § 6) which in turn was derived from the Penal Code of 1881.
*50 Section 1914 of the former Penal Law read as follows:
“Obstructing attempts to extinguish fires
“A person who at any fire is guilty of any disobedience to lawful orders of a public officer or fireman, or of any resistance to, or interference with, the lawful efforts of a fireman or company of firemen, to extinguish the same, or of any disorderly conduct likely to prevent the same from being extinguished, or who forbids, prevents or dissuades others from assisting to extinguish the same, is guilty of a misdemeanor.”
The Firefighter Testimony
Lieutenant Dalillo of the New York City Fire Department responded to a telephone alarm concerning the defendants’ residence and upon arrival observed a smoldering couch on the front porch of a two-story, attached residential building. Although listed as a private house it appeared to him to be a multiple dwelling. The main entrance door was open and he observed the inside of the building to be filled with smoke.
On cross-examination the lieutenant stated that the condition of the couch indicated that the earlier couch fire could have been extinguished for anywhere from 3 to 15 minutes depending on the material and what had caused the fire.
The lieutenant and other firefighters entered the building because “it indicated to me that there was some type of fire or that that couch came from the inside of the building. It’s my job to determine where this couch came from because it’s our experience that people take a couch, a mattress, or some belonging and remove it from the building, and we have to make sure that — I have to make sure that there’s no fire still in the building; that there is no more hazard to that building or the surrounding building or anybody else that lives within that building.”
He later explained that the couch may not have been the primary site of the fire or that the couch itself may have started another fire.
Upon entering the front hallway along with a probationary firefighter the lieutenant observed an open door to his right. The two then entered an apartment and encountered the defendants. Defendant Mario Melendez immediately began to yell obscenities and tell the firefighters to get out. He then started to push and shove the lieutenant and grabbed for his helmet and other firefighting gear including the air pack, the face mask of which was not being worn at the time. The fire *51 fighters then restrained Melendez on a couch and the lieutenant told the other defendant, Carmen De Jesus, to tell Melendez in Spanish to stop, that they were just looking for fire. She then said something to Melendez in Spanish and he appeared to calm down. They asked De Jesus if it was okay and she said yes. They released Melendez and he began to act in the same manner as before. The lieutenant then communicated with the driver of the fire truck and told him to call the police.
The confrontation then backed out of the living room and continued in the doorway of the apartment. Eventually, another firefighter who had been in the rear of the building arrived and, according to the lieutenant, “there was a lot of pushing, shoving and a lot of jostling. Mario was still in an uncontrollable state and whenever Mario had calmed down, Carmen had also calmed down and she was very rational; Mario was not. When Mario went off again in these violent spurts, then she would do the same thing. She would grab for your neck and shoulders and she wound up doing this to Victor De Keno, but that sequence was kind of short and a lot of other firemen by now are starting to mill around because of all the commotion that is going on. Then the P.D. came in and I ordered everybody to back off, back out.”
The fire investigation of the defendants’ apartment was not able to be completed at the time because of this incident but was subsequently completed by another unit. No additional fire was found.
The remainder of the trial testimony related to the events which occurred once the police arrived. These events are the subject of the additional crimes with which the defendants are charged.
Conclusions of Law
The defendants’ primary argument for dismissal of the count of attempted obstructing of firefighting operations is that the People failed to present a prima facie case to support the charge since the testimony showed that there was no longer any fire and therefore the defendants cannot be found guilty of attempting to obstruct “the efforts of any fireman in extinguishing a fire” as required by the terms of the statute.
As stated earlier, there are no reported decisions construing the scope of liability under the statute.
“Words of ordinary import used in a statute are to be given their usual and commonly understood meaning, unless it is plain from the statute that a different meaning is intended” (McKinney’s Cons Laws of NY, Book 1, Statutes § 232).
*52 The word fire requires no resort to a dictionary for definition. The defense argument would require the presence of open flame in order for liability to attach under the statute, smoldering furniture and a house full of smoke being insufficient for the purpose.
This court finds, however, that the phrases “in extinguishing a fire” in the present statute and “at any fire” in the predecessor statute from which it was derived must be given a more expansive interpretation since “[t]he primary consideration * * * in the construction of statutes is to ascertain and give effect to the intention of the Legislature” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92). Such construction must be a reasonable one, “it being presumed that a reasonable result was intended by the Legislature” (McKinney’s Cons Laws of NY, Book 1, Statutes § 143).
The defendants’ insistence upon a strict reading of the term fire would result in a situation where a person assaulting a hose-wielding firefighter could be charged with the offense only so long as a burning building was still in flames and liability would end at the moment such flames had been doused, regardless of any potential for reignition. The court will not adopt that interpretation since “[w]ords contained in a statute must, of course, be given the meaning to which they are reasonably entitled but this does not mean that we must accept the language in all of its sheer literalness and forget completely the object which the statute was designed to accomplish” (Matter of Kelly v Sugarman, 12 NY2d 298, 300).
Fire poses a greater threat to the persons and property of large numbers of people than any other commonly occurring calamity.* To hold that the Legislature intended a restrictive interpretation to be placed on a law proscribing interference with firefighting operations would defy common sense. “A construction which would make a statute absurd will be *53 rejected” (McKinney’s Cons Laws of NY, Book 1, Statutes § 145).
Moreover, to find that where there is smoke alone there is no fire would impugn the proverbial observation to the contrary.
The court therefore finds that the phrase “in extinguishing a fire” contained in the statute includes the period following the elimination of any flame up to the point when it has been determined by firefighters that there is no longer a danger of additional fire. The temporal and spatial limits of the investigation must be left, in the first instance, to the training and experience of those charged with protecting the public from the danger, provided that such limits be reasonable ones. Since the statute requires that a person charged with the crime act intentionally and unreasonably, the firefighting follow-up operation must also be reasonable in scope. What may be necessary and reasonable to assure safety in connection with an urban, multiple dwelling fire may not be so at the site of a rural barn fire. The conduct that will constitute a violation of the statute must therefore be determined on a case-by-case basis.
The court finds that the actions of the defendants in this case, as related in the trial testimony, are of a kind which the statute was intended to prohibit. Since the testimony presents a prima facie case in support of the charge (see, People v Jennings, 69 NY2d 103, 115), the motion for a trial order of dismissal is denied.

 Conduct in matters relating to fire has been the subject of regulation in what is now New York for 350 years. A New Amsterdam ordinance of January 28, 1648 imposed a fine of three guilders on those failing to keep their chimneys clean (O’Callaghan, Laws and Ordinances of New Netherland, 1638-1674, at 82 [Weed, Parsons and Company 1868]).
A New York City law of December 16, 1737 set up a full-time fire company and required constables and other law enforcement officials to report to any fire with the badges of their authority “and be aiding and Assisting as well in the Extinguishing the said ffires and Causeing People to work as also in preventing Goods being Stolen and Shall Seize and apprehend all ill disposed persons that they find Stealing or Pilfering from the Inhabitants” (2 Colonial Laws of NY, ch 670, at 1067 [1894 ed]).